W. D. ROBERTS, et al., v. BROADWAY COAL MINING CO., et al.

Western Section.   December 20, 1927.

Petition for Certiorari denied by Supreme Court, March 17, 1928.

1. **Mortgages.** It is sufficient that mortgagor substantially complied with the terms of the deed of trust.

In an action to compel defendant to have certain funds set apart as a sinking fund in compliance with a deed of trust where the deed of trust provided that the sinking fund might be invested in other lands, by the trustee and the evidence showed that the mortgagor had invested more money than was required to be placed in the sinking fund and had otherwise complied with the terms of the mortgage, held that it was immaterial that the mortgagor had paid the money out itself, rather than turning it over to the trustee to be paid out.

2. **Mortgages. Insurance.** Where mortgagor actually takes out insurance required in mortgage, it is immaterial who has actual possession of the policy.

Where the plaintiff insisted that the mortgagor had broken the terms of the deed of trust by not depositing with the trustee certain insurance policies and it was shown that the mortgagor had taken out the policies required, but had failed to deposit them with the trustee, held that the breach of the conditions were immaterial.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed.

John R. Walker and A. G. Riley, of Memphis, for appellant.

T. K. Riddick and Wilson, Gates & Armstrong, of Memphis, for appellee.

OWEN, J.   W. D. Roberts has appealed from a decree of the chancery court of Shelby county dismissing his bill.  The original bill was filed the 23d day of May 1924 against the Broadway Coal Mining Company, a corporation, chartered under the laws of Tennessee, and engaged in mining coal, with its principal office in the City of Memphis, but its mining property located in Ohio county, Kentucky.  The Bank of Commerce & Trust Company, trustee, was also made a party defendant.

Complainant alleged that he was the owner and holder of bonds to the amount of $16,000, which were secured by a deed of trust executed by the defendant Mining Company to the bank as trustee, which trust deed was executed the first day of April 1914 on the properties of said Mining Company to secure $100,000 of bonds dated April 1, 1914, and due April 1, 1934.  It was insisted by said

bill that certain clauses hereinafter set out in this opinion, or paragraphs in said trust deed, had not been complied with, and that the complainant, by reason of the default of said mortgagor, had the right to have said trust deed foreclosed, and that if not entitled to a foreclosure then he had a right to have certain funds received by the mortgagor set apart as a sinking fund for the retirement of said bonds.

There was a demurrer to the bill, which was sustained in part, and upon an appeal allowed in the discretion of the Chancellor the Supreme Court dismissed so much and such parts of complainant's bill as sought a foreclosure of said deed of trust but overruled the demurrers interposed by the defendants as to so much and such parts of the bill as alleged a default in the performance of the obligations, conditions and covenants of the trust deed providing for the creation and maintenance of the sinking fund and insuring of the property, and the deposit of such insurance policies with the trustee, the Supreme Court being of opinion that upon the allegations as stated in the bill, which were admitted by demurrer, complainant was entitled to maintain said bill for the purpose of compelling and performance by the mortgagor (the Coal Co.) of such conditions, covenants and obligations as are alleged by the bill not to have been performed or kept. Said paragraphs in said trust deed alleged to have been breached are as follows:

"Section 6. A sinking fund shall be created for the redemption of the bonds issued hereunder. It shall consist of and be maintained by the payment to the trustee by the company of 2-1/2 cents per ton on all mine run coal mined and shipped after three years from the date hereof, and until the redemption of all the bonds secured by this deed of trust, such moneys so paid to be used in the purchase of additional lands or improvements, which, when so purchased, shall be subject to, and included in the lien hereof, or at the option of the company in the event the company shall elect to redeem bonds rather than purchase other lands or improvements, shall be used in the redemption of the bonds outstanding, as hereinafter provided. In the event that the company shall elect to invest any part of the sinking fund in other lands or improvements, the conditions or procedure under which it may do so are herein set out in paragraph 13 following: In the event the company shall elect to invest any part of the sinking fund in outstanding bonds secured hereby, prior to maturity thereof, the conditions and procedure under which it may do so are set out in paragraph 14 following.

. . . . . . . . . . .

"Paragraph 8. The company covenants and agrees that all buildings, structures and machinery situated upon the properties

affected by this mortgage, given to secure the bonds issued there-under, shall be kept insured during the entire term of this indenture, to the amount of insurance on such properties usually allowed by insurance companies, against loss or damage by fire, and against loss or damage from boiler explosions, and that the said company shall and will pay all premiums upon all policies for such insurance. All such policies shall be made payable to the trustee, and shall be deposited with it for the benefit and protection of the bond holders, should any loss occur from fire or boiler explosion during the term of this indenture. Any payments and insurance made under such policies may be applied directly by the trustee to the repairing or replacement of the property damaged or destroyed, or it may authorize the company to contract for such repairs or replacements, and pay part or all of the cost thereof from said insurance moneys. The trustee may, at its discretion, employ such insurance moneys in the purchase or redemption of outstanding bonds, as set forth in section 14, instead of expending the same for the repair or replacement of the property damaged or destroyed.

Upon a remand of the cause for answer the Bank of Commerce & Trust Company filed its answer, neither admitting nor denying the various allegations of the bill with reference to the bonds held by the complainant and the various breaches of the contract contained in said trust deed as alleged by complainant. The Coal Mining Company filed its separate answer admitting that it had failed to file the policies of insurance with the trustee, but stated that it would do so on or before the hearing. It insisted that it had taken out the amount of insurance required, with the loss payable to the trustee, and the defendants insisted that it had complied with the requirements of the trust deed with regard to the sinking fund; that it had invested more money in additional lands and improvements than the trust deed required to be used in order to create and maintain a sinking fund. The defendant admitted that it had mined 775,319 tons of coal, which at 2½ cents per ton would aggregate $19,382.98, but that it had invested this $19,382.98, and more, in improvements and additional coal lands in accordance with the provisions of the trust deed, and particularly in accordance with the provisions of the thirteenth section of the said trust deed which is as follows:

"(Sinking fund investment in lands or improvements). When there shall have accumulated in the hands of the trustee any moneys delivered from sinking fund source, which the company shall desire to invest in other lands or improvements, the trustee may pay such moneys to the company or its order, upon the following conditions, and none other, to-wit:

"(a) The company shall file with the trustee a certified copy of the resolution or resolutions of the board of directors of the company,

showing what lands are to be or have been purchased, or what improvements are to have been purchased or made, and authorizing such expenditure for such purposes.

"(b)   The company shall also deliver to the trustee the affidavits of its president or vice-president and treasurer, and of two disinterested persons not connected with the company, in which it shall be stated the amount to be or which has been expended for such lands or improvements, and that same are actually worth such price and are suitable for the purpose for which they were or are to be required.

"(c)  The company shall also file with the trustee the opinion of some reliable attorney or attorneys at law, in case of purchase of additional lands, which opinion or opinions shall show the titles to the lands are good and marketable, or will be so when they have been transferred to the company.

"(b).  The company shall execute and deliver to the trustee a supplemental deed of trust to Bank of Commerce & Trust Company, trustee, properly including said lands or improvements, and encumber same to secure the bonds, coupons, or other debt hereby secured. The company shall also arrange with the trustee for the registration of such supplemental deed or deeds of trust.  In event it shall be desired to use any such moneys in sinking fund for the purpose of acquiring such lands or improvements, before title to same shall have been actually transferred to the company, and encumber as aforesaid, the company shall take all steps to insure such acquisition of title, and to encumber the same so as to secure the bonds, coupons or other debts hereby secured, as the trustee shall require, upon which being done the trustee may pay for the same out of the sinking fund money. If title shall have already been acquired, and said lands or improvements properly encumbered for the aforesaid purposes, then and in that event upon the evidence being produced to the trustee fulfilling the foregoing requirements, that the same has been done, the trustee may pay for the same by way of reimbursing the company for such out lay, out of moneys in the sinking fund.

"All affidavits, deeds, bonds, certificates, deeds of trust or other documents, papers or evidence relating to such investments of sinking fund moneys shall be such as may be satisfactory to the trustee or its counsel; and the trustee shall not be liable for acting upon any of the same, except for bad faith."

During the pendency of this cause, the original complainant died. His death was admitted and the cause was revived in the name of his executors.  A number of depositions were taken by both complainant and defendant, and a large number of exhibits were introduced which have been sent up in their original form.

Upon a hearing the Chancellor ordered a reference to the Clerk and Master, to take proof, including that on file, and report: "First, what

amount of money is due the trustee on account of the sinking fund, under Section 6 of the mortgage based upon 2½ cents per ton on all mine run coal mined and shipped from the first day of April, 1917 to the date of the reference. Second: whether or not the Broadway Coal Mining Co., has by the date of the reference complied with requirements of Section 13, of the mortgage, with reference to the investment of said sinking fund."

The Clerk and Master took proof and made his report, which report was excepted to by both parties and the Chancellor re-referred the cause to the Clerk and Master, referring the same matters as had been previously referred. Thereupon the Clerk and Master reported that the amount of money, account sinking fund due the receiver is $22,940.55 by reason of coal mined at 2½ cent per ton. The Clerk and Master further reported that the defendant had invested $8790 in four tracts of land that it had purchased in Ohio county, Kentucky, said four tracts aggregating 842 acres. He also reported that they had spent $8189.87 in improvements. The Master was of opinion that these expenditures were reasonable and were probably for the best interest of the company but there was no authority to make the same from the sinking fund as this could only be done from the funds in the hands of the trustee. Later it was shown that the mining company had spent $14,150.65 for what it termed necessary improvements which, added to the $8790 paid for lands, total $22,940.65, or ten cents more than the amount due the sinking fund on coal mined at 2½ cents per ton. The complainant excepted to this second report of the Clerk and Master, which exception was overruled, and upon the cause coming on to be finally heard the Clerk and Master's report on the re-reference, or second reference, was in all things by the court confirmed. Complainant's exceptions were overruled, the court holding that the terms of the trust deed had been substantially complied with; the complainant was not granted any relief and his bill dismissed. Due exceptions were entered by complainant and an appeal prayed and granted to this court.

The complainant has assigned numerous errors, but they raise only two propositions. By these assignments it is insisted that the Chancellor was in error in decreeing that complainant was entitled to have the 2½ cents per ton on coal mined, paid over to the trustee; that the appellant was entitled to have this money in the hands of the trustee at all times, and that it could only be paid out by a compliance with Section 13; that subsection "a" of Section 13 was not complied with for the reason that the resolution was passed authorizing the purchase of all the tracts except the Hobdy tract, when, as a matter of fact, all of these tracts, with the exception of the Hobdy tract, were purchased before the resolution was passed; that subsection "B" was not complied with in regard to the necessary affidavits;

and subsection "C" was not complied with for the reason the defendant had failed to secure an opinion of some reliable attorney in regard to the purchase of additional lands. It is also insisted that the insurance policies hadn't been delivered to the trustee. In regard to the policies of insurance to be issued on defendants property, we find the following: "The trust deed securing the bonds, stipulates that certain insurance policies shall be taken out and deposited with the trustee. The proof shows that there were taken out, policies payable to the trustee, which could not be collected by anyone else; also that the policies were tendered to the representatives of the trustee, and declined for some immaterial reason.

We find that insurance policies were taken out to the amount of more than $60,000 payable to the Bank of Commerce & Trust Company, as trustee, so we deem it immaterial who had the actual possession of the policies. No one could collect on said insurance policies except the trustee. It appears that fire insurance companies keep copies of insurance policies issued, and we do not find that the complainant is prejudiced or that his bonds are impaired in the slightest degree by the trustee having the actual physical possession of said insurance policies.

We further find that in the purchase of additional lands and in the necessary improvements and betterments, the Clerk and Master reported that the same were reasonable and apparently necessary for the good of the Mining Company and this report has been confirmed by the Chancellor. It is true that there are some irregularities in the making of these improvements and purchases. The 2½ cent per ton on the coal was not actually paid to the trustee and then by the trustee paid for the lands purchased, and for the improvements, but this irregularity did not injure the complainant. Neither did it impair his security in any manner, or decrease his security. It appears that the Mining Company is capitalized for $100,000; that it issued bonds for said amount, $66,000 of which bonds were sold and the remaining $34,000 held by the president of the company as trustee, but they have been hypothecated to secure a loan of the defendant Mining Company to one of the banks of Memphis, Tennessee. The proof shows that the property owned by the Mining Company is reasonably worth $200,000; that it has paid all interest on said bonds promptly and has promptly paid its debts. It is true that certain affidavits of the officers of the company were not filed with the trustee; that the board of directors did not pass a resolution authorizing the purchase of the lands, and file a copy of this resolution with the trustee prior to the purchase; however, they have filed such documents, and the power to ratify includes the power to purchase. It appears that they procured the opinion of one J. S. Glenn of Hartford, Kentucky, a reputable attorney, who approved the title to all the lands that the company purchased with its sinking fund.

The Chancellor held that it was a matter of no importance whether these various documents referred to in subsection 13 had actually been filed with the trustee or not, but the important matter was whether the mortgagor, the Coal Mining Company, had substantially complied with these requirements; and the Chancellor held that it did not make any material difference by whom or when these amounts for lands or for the necessary improvements were paid, so long as they were paid, so that the investments were necessary and reasonable; and since we have the concurrent finding of the Master and Chancellor that the purchase of lands and the expenditures on the plant were necessary and reasonable, for the best interest of the company, we are of opinion that this finding is conclusive on this question of fact, and we are of opinion that the Chancellor committed no error in applying the law to the facts as found by the Clerk and Master and confirmed by the Chancellor.

It results that we find no error in the decree of the Chancellor. All of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. The complainant and surety on the appeal bond will pay all the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.